[Cite as *State v. Cooper*, 2020-Ohio-3559.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-A-0090** |
| DUONE D. COOPER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 2019 CRB 01024.

Judgment: Affirmed.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, Ohio 44004 (For Plaintiff-Appellee).

*Donald K. Pond, Jr.,* 600 Brown Street, Akron, Ohio 44311 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Duone D. Cooper, appeals his conviction for domestic violence contending it is against the manifest weight of the evidence and not supported by sufficient evidence. We affirm.

{¶2} Cooper was convicted of domestic violence, a misdemeanor of the fourth degree in violation of R.C. 2919.25(C) after a bench trial. He raises two assignments of error, which we address collectively:

{¶3} "The evidence was insufficient to sustain a finding that defendant, Duone Cooper, was guilty of domestic violence. (T.d. 25).

{¶4} "The trial court's verdict of guilty is against the manifest weight of the evidence. (T.d. 25)."

{¶5} In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the prosecution. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is "'a term of art meaning that legal standard which is applied to determine whether the case may go to the [finder of fact] or whether the evidence is legally sufficient to support the * * * verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶6} "In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*" *State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, 96 N.E.3d 1046, ¶95, *appeal not allowed,* 151 Ohio St.3d 1515, 2018-Ohio-365, 90 N.E.3d 952.

{¶7} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns 'the

2

inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' (Emphasis added.) [Black's Law Dictionary (6 Ed.1990) ], at 1594.

{¶8}    "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony. * * * See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." *Thompkins*, 78 Ohio St.3d 380, at 387.

{¶9}    "The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. * * *." *State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 28.

3

{¶10} When an appellate court finds a conviction is supported by the weight of the evidence, this conclusion includes a finding that sufficient evidence supports the conviction. *State v. Smith*, 11th Dist. Portage No. 2016-P-0074, 2018-Ohio-4799, ¶ 53, *motion for delayed appeal granted,* 155 Ohio St.3d 1411, 2019-Ohio-1205, 120 N.E.3d 30, and *appeal not allowed,* 156 Ohio St.3d 1452, 2019-Ohio-2780, 125 N.E.3d 947, and *appeal not allowed,* 157 Ohio St.3d 1564, 2020-Ohio-313, 138 N.E.3d 1165.

{¶11} Cooper was convicted of domestic violence in violation of R.C. 2919.25(C), which states: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶12} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶13} "Family or household member" includes the natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent and who has resided with the offender. R.C. 2919.25(F)(1)(b).

{¶14} "The victim's state of mind is an essential element of domestic violence under R.C. 2919.25(C). * * * '[T]here must be some evidence either that a victim stated, or that from other evidence it could be inferred, that the victim thought that the accused would cause imminent physical harm.'" *State v. South*, 2nd Dist. Champaign No. 2017-CA-34, 2018-Ohio-4146, ¶ 13, quoting *Hamilton v. Cameron*, 121 Ohio App.3d 445, 449, 700 N.E.2d 336 (12th Dist.1997).

4

{¶15} The state presented two witnesses at trial, Michelle Bird and Officer Christina Delfina of the Ashtabula City Police Department. It is undisputed that Michelle is the mother of one of Cooper's children and that she used to live with him.

{¶16} On the date in question, Michelle was in her residence with her boyfriend Cody when Cooper called her on the phone. At about the exact time of the call, Michelle heard someone yelling and banging on her door. Knowing it was Cooper outside and on her phone, Michelle called 911 because this was not the first time this happened. Michelle believed that Cooper was angry because her boyfriend was with her since she and Cooper had previously been in a relationship.

{¶17} Michelle testified that Cooper was yelling come outside and was putting his head through her home's windows. She said it was warm outside, and her windows, which did not have screens, were open. Upon being asked if she felt threatened by him, Michelle said she was fearful of Cooper at the time.

{¶18} She recalls Cooper acting crazy and banging on her windows, walking around her home, and then yelling to come outside to "come get this."

{¶19} When asked how Cooper was threatening, she explained that it was his "whole demeanor," stating that he had broken into her house before. She believed that Cooper was threatening her but conceded his threats could have been directed at both her and Cody as Cooper was nonspecific as to whether he was directing his ire toward one, the other, or both.

{¶20} Michelle also told the police that she thought Cooper had a weapon but that she did not know for sure. She based this on his statements that "I got that thing in my car * * *, come get this."

{¶21} Officer Delfina was one of the responding officers to Michelle's call. Cooper left the scene before Delfina arrived, but he called Michelle while Delfina was at her home, and Delfina spoke with Cooper on Michelle's phone. Delfina recalls Cooper yelling so much it was almost undiscernible.

{¶22} In arguing that his conviction is based on insufficient evidence and against the manifest weight of the evidence, Cooper claims that the conviction is based on innuendos and not actual evidence that Cooper's conduct was directed at Michelle. Instead, he claims his conduct was directed at Cody. Cooper also claims there was no evidence that he made any verbal threats or statements indicating an intent to harm anyone, and that Michelle's conduct was inconsistent with someone in fear for her safety because she did not close her windows.

{¶23} We disagree. Michelle testified that she was in fear for her safety based on Cooper's entire demeanor. She found his words and crazy physical behavior threatening and believed she was in danger. He was screaming and circling her home. He was banging on her windows and doors, and he put his head through the windows. Cooper also yelled to come outside "to handle this" and to "come get this" and that he had "that thing" in his car, which she believed meant that he had a weapon. Moreover, she testified that this was not the first time this had happened and that he had previously broken into her home.

{¶24} Her testimony was bolstered by Delfina's testimony who described Cooper's yelling on the phone as almost undiscernible.

{¶25} Contrary to Cooper's argument, there is nothing in R.C. 2919.25(C) limiting the threat of force to specific verbal threats. The court could reasonably infer that his

6

statements coupled with his erratic and angry behavior outside her home were sufficient to cause Michelle to believe that Cooper was going to cause her imminent physical harm, and Michelle testified that she was afraid and believed he had a weapon.

{¶26} The state's undisputed evidence shows that Cooper, by threat of force, knowingly caused Michelle to believe that he would cause her imminent physical harm. The fact that Cooper's threat of force was less than explicit was before the court for it to consider. Michelle's belief that Cooper was going to cause her imminent physical harm was reasonable based on his conduct and statements as well as his past behavior, which was undisputed. And because the defense did not raise Michelle's alleged failure to close the windows at trial, there is no evidence on this issue.

{¶27} Further, there is nothing requiring a conclusion that Cooper's conduct was directed solely toward Cody, as Cooper now alleges on appeal. The issue was whether Cooper was aware that his conduct, although not specifically directed, would probably cause Michelle to believe he would cause her imminent physical harm. And even assuming Cooper intended for his conduct to be directed solely toward Cody, he is still guilty as the issue is not his subjective intent. The issue is, regardless of subjective intent, whether his conduct, although not specifically directed, would probably cause Michelle to believe that he would cause her imminent physical harm.

{¶28} Last, appellant suggests that for the state to prove that Michelle believed he would cause her imminent harm, it had to present specific evidence showing Cooper previously engaged in prior acts of violence toward her citing *State v. Collie,* 108 Ohio App.3d 580, 583-84, 671 N.E.2d 338 (1st Dist.1996), *State v. Kent,* 7th Dist. Mahoning No. 97 CA 129, 1999 WL 689222 (Aug. 26, 1999), and *State v. Kergan*, 7th Dist.

7

Mahoning No. 11 MA 72, 2012-Ohio-1407, ¶ 13. While these cases admitted evidence of the defendant's prior acts of violence to prove the victim's belief, neither these cases nor R.C. 2919.25(C) requires it.

{¶29} Upon reviewing the entire record, weighing the evidence and all reasonable inferences, the trier of fact did not lose its way. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Cooper's conviction is not against the manifest weight of the evidence and is therefore supported by sufficient evidence.

{¶30} Accordingly, his first and second assigned errors lack merit, and the trial court's decision is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.

8